# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

№ 06 Civ. 2011 (RJS)

---

JAMES HARRIS,

Plaintiff,

VERSUS

WESTCHESTER COUNTY DEPARTMENT OF CORRECTIONS, COMMISSIONER ROCCO POZZI, INDIVIDUALLY AND AS THE COMMISSIONER OF THE WESTCHESTER COUNTY DEPT. OF CORRECTIONS, WARDEN ANTHONY AMICUCCI, INDIVIDUALLY AND AS THE SENIOR ADMINISTRATOR OF THE WESTCHESTER COUNTY JAIL, SGT. MACABBEE, INDIVIDUALLY AND AS A SUPERVISING OFFICER, SGT. HARGRAVES, INDIVIDUALLY AND AS A SUPERVISING OFFICER, CAPTAIN ORLANDO, INDIVIDUALLY AND AS THE FACILITY GRIEVANCE COORDINATOR, P.A. ODURO, INDIVIDUALLY AND AS HEALTH CARE PROVIDER,

Defendants.

---

MEMORANDUM AND ORDER
April___, 2008

---

RICHARD J. SULLIVAN, District Judge:

Plaintiff James Harris, an incarcerated individual proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 to recover damages for alleged violations of his constitutional rights in connection with a slip-and-fall accident in his cell on December 16, 2005. Defendants now move to dismiss plaintiff's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has failed to submit an opposition to defendants' motion.

For the following reasons, defendants' unopposed motion to dismiss is granted in part and denied in part.

I. BACKGROUND

Plaintiff asserts three claims relating to his alleged slip-and-fall on a puddle of water in his cell at the Westchester County Jail on December16, 2005. First, plaintiff asserts that, following his fall, defendants were negligent in investigating plaintiff's grievances regarding the conditions that caused him to slip in his cell. Second, plaintiff asserts that defendants failed to maintain constitutionally adequate living conditions in plaintiff's cell. Finally, plaintiff asserts that defendants failed to provide adequate medical treatment for injuries plaintiff allegedly sustained as a result of the fall. Plaintiff asserts these claims against the Westchester County Department of Corrections (the "WDOC"), as well as the WDOC's Commissioner, the Warden of the Westchester County Jail, and several individual employees of the WDOC.

On May 16, 2006, defendants filed the instant motion to dismiss. Thereafter, plaintiff failed to submit a response to defendants' motion. Following reassignment of this case to the undersigned on September 4, 2007, the Court directed plaintiff to submit a letter regarding his intent to oppose defendants' motion.[1] (Oct. 3, 2007 Order.) Plaintiff submitted a letter to the Court on October 29, 2007, but failed to address the Court's request and stated that he "figured" the Court would "be waiting for my release to contact me." (Pl.'s Oct. 29, 2007 Ltr.)

Subsequently, by order dated November 7, 2007, the Court warned plaintiff that his incarceration did not excuse him from his obligation to prosecute this action, and directed him to submit a letter by November 19, 2007, indicating (1) whether he has received defendants' moving papers relating to their motion to dismiss the complaint and, (2) if he has received such materials, whether he intends to oppose defendants' motion. (Nov. 7, 2007 Order.)

By letter dated November 19, 2007, plaintiff indicated that (1) he had not received a copy of defendants' moving papers because they were sent to his civilian address rather than to the correctional facility where he was incarcerated at that time; and (2) he intends to oppose "any motion to dismiss my complaint." (Pl.'s Nov. 19, 2007 Ltr. at 1.)

By Order dated December 3, 2007, the Court directed defendants to serve a copy of their motion to dismiss, and the papers in support thereof, upon plaintiff. The Court also directed plaintiff to submit his opposition to defendants' motion by February 1, 2008, and warned the parties that "[n]o further extensions or alterations of the briefing schedule shall be granted." (Dec. 3, 2007 Order.)

Thereafter, defendants filed an affidavit of service indicating that plaintiff was served with a copy of the moving papers on December 10, 2007, at the most recent address provided to the Court by plaintiff. At this time, over eight weeks from the deadline for plaintiff's opposition, plaintiff has not responded to defendants' motion, requested

---

[1] The entirety of the Court's orders were sent by mail to the respective addresses provided to the Court by plaintiff.

an extension of time to do so, or otherwise been in contact with the Court.[2]

Defendants assert the following grounds for dismissal: (1) plaintiff has failed to exhaust the appropriate administrative remedies prior to filing the instant action; (2) plaintiff has failed to sufficiently allege a violation of his constitutional rights under Section 1983; and (3) plaintiff has failed to sufficiently allege that the individually named defendants were personally involved in the alleged violations of plaintiff's rights.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

The plaintiff's failure to oppose a 12(b)(6) motion, by itself, does not merit dismissal of a complaint. *See McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000); *see also Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983). "[A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall*, 232 F.3d at 322-23. Thus, in deciding an unopposed motion to dismiss, a court is to "assume the truth of a pleading's factual allegations and test only its legal sufficiency" pursuant to the following standards. *Id.* at 322.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Moreover, as plaintiff is appearing *pro se*, the Court shall "'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("The policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

---

[2] It may be that plaintiff's failure to comply with the December 3, 2007 Order, and his continued failure to communicate with the Court, is an indication that he no longer wishes to prosecute this action. However, in an abundance of caution and because plaintiff has previously stated his intention to oppose any motion to dismiss (*See* Pl.'s Nov. 19, 2007 Ltr. at 1), the Court will address defendants' motion on the merits.

3

B. Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524 (2002) (observing that the PLRA is intended to "reduce the quantity and improve the quality of prisoner suits"). The PLRA's exhaustion requirement is intended to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. The Supreme Court has made clear that "the PLRA's exhaustion requirement applies to all inmate suits about prison life . . . ." *Id.* at 532.

The failure to exhaust administrative remedies is an affirmative defense and the defendant therefore bears the burden of proving that claims have not been exhausted. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999) ("[A] defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiffs' failure to comply with the PLRA's requirements."). In *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), the Second Circuit observed that the district court must engage in a three-part inquiry in addressing the defendant's argument that a prisoner failed to exhaust. First, the court determines whether administrative remedies were "available" to the prisoner. *Id.* (citing *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)). Second, the court considers whether the defendants "have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it." *Id.* (citing *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004)). Third, the court looks to whether the defendant's "own actions inhibit[ed] the inmate's exhaustion of remedies," and if so, whether such actions "may estop one or more of the defendants from raising" the defense. *Id.* (citing *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004)). "If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Id.* (internal quotation marks and citations omitted).

III. DISCUSSION

A. Exhaustion of Administrative Remedies Under the PLRA

Defendants' exhaustion argument merits only brief consideration by the Court. "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 127 S.Ct. 910, 921 (2007). "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face

4

of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). Thus, a Rule 12(b)(6) motion is the proper vehicle to assert an exhaustion defense *only* where the plaintiff's failure to exhaust is "apparent from the face of the complaint . . . ." *McCoy v. Goord*, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003); *see e.g.*, *Perez v. Westchester County Dept. of Corrs.*, No. 05 Civ. 8120 (RMB), 2007 WL 1288579, at *3 (S.D.N.Y. Apr. 30, 2007) ("Defendants may raise the affirmative defensive of non-exhaustion in their answer, but Plaintiffs' failure to exhaust does not amount to failure to state a claim.") (internal quotation marks and citations omitted); *Voorhees v. Goord*, No. 05 Civ. 1407 (KMW) (HBP), 2006 WL 1888638, at *7 (S.D.N.Y. Feb. 24, 2006) (observing that the exhaustion issue may be resolved at the motion to dismiss stage where non-exhaustion "is discernible from the complaint and its attachments").

In this case, the complaint alleges that plaintiff filed certain grievances (*see* Compl. ¶ 6), and that these grievance were "denied and exhausted" (*id.* ¶ 11). However, plaintiff fails to allege that he filed any appeals, or otherwise took specific steps to exhaust the administrative remedies available to him.

Such gaps in the complaint do not provide a basis for dismissal at this stage of the case. Plaintiff is *not* required to plead exhaustion to survive a motion to dismiss. *See Jones*, 127 S.Ct. at 921. Moreover, defendants have plainly failed to discharge their burden of proving non-exhaustion. Defendants offer nothing more than bare assertions in their brief regarding plaintiff's purported failure to exhaust, and have failed to provide *any* information regarding their own grievance procedures. *See Brown v. Austin*, No. 05 Civ. 9443 (PKC), 2007 WL 2907313, at *3 (S.D.N.Y. Oct. 3, 2007).

Accordingly, "[b]ecause the Court cannot undertake the *Hemphill* inquiry until the factual record is developed, dismissal of the action at this early stage is premature." *Brown*, 2007 WL 2907313, at *3 (internal citation omitted). Therefore, defendants' motion to dismiss on exhaustion grounds is denied. The Court notes, however, that the exhaustion issue may look quite different at a later stage of this case, and nothing herein is intended to prejudice defendants' right to renew their motion on exhaustion grounds.

Furthermore, the Court notes that plaintiff alleges, *inter alia*, that "lengthy [and] detailed grievances have continuously been shot down for illegitimate and furtive reasons. Correspondences . . . go unanswered and ignored . . . . Further efforts are met with indifference and the administration . . . sit on their hands or pass it down to their subordinates . . . ." (*See* Compl. ¶¶ 9, 10, 11.) Plaintiff specifically alleges that (1) on December 16, 2005, plaintiff told defendant Macabbee, the supervising correctional officer, that he was "going to grieve" against Macabbee, to which Macabbee allegedly replied, "Whatever. But its [sic] not going anywhere. Who do you think is going to investigate it?" (*id.* ¶ 5); and (2) on December 19, 2005, plaintiff attempted "unsuccessfully five times" to file a grievance, but alleges that "no supervising officer wanted to recieve [sic] the grievance" and only accepted it "after much debate" (*id.* ¶ 6). [3] However, because

---

[3] Neither party has provided the full names of defendants Macabbee, Hargraves, Orlando, or Oduro.

5

the Court has denied defendants' motion on exhaustion grounds, and because neither party has briefed the issue, the Court declines to reach the question of whether plaintiff has plausibly alleged that defendants impeded his ability to pursue administrative remedies. *See Hemphill*, 380 F.3d at 686 ("To the extent that the plaintiff lacked 'available' administrative remedies, the PLRA's exhaustion requirement is inapplicable.").

## B. Failure to State A Claim

Defendants also argue that plaintiff has failed to sufficiently allege a claim under Section 1983. To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; (2) by a person acting under the color of state law. *See* 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

Construing the complaint to raise the strongest arguments it suggests, the Court reads the complaint as alleging three claims: (1) defendants were "intentionally negligent" in responding to plaintiff's grievances; (2) defendants failed to maintain constitutionally adequate living conditions in plaintiff's cell; and (3) defendants were deliberately indifferent to plaintiff's serious medical needs. For the following reasons, the Court grants defendants' motion as to the first two claims, and grants in part and denies in part defendants' motion as to the third claim. The Court also grants defendants' motion to dismiss plaintiff's *Monell* claims.

### 1. Grievances Claim

First, the Court dismisses plaintiff's claim regarding defendants' handling of grievances filed by plaintiff. The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances. *See Bill Johnson's Rest., Inc. v. NLRB*, 461 U.S. 731, 741 (1983). However, "inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures [do] not give rise to a cognizable § 1983 claim." *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 369-70 (W.D.N.Y. 2005) (citing *Cancel v. Goord*, No. 00 Civ. 2042 (LMM), 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("[I]nmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983. . . . Thus, [the plaintiff's] claim that the Defendants violated his First Amendment right of access to the courts and right to petition the government for redress by failing to process his grievances lacks merit and is dismissed with prejudice.")); *see, e.g.*, *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("Prison grievance procedures do not confer any substantive right upon an inmate . . . ."); *see also Anderson v. Duke*, No. 04 Civ. 0030 (NAM), 2008 WL 238557, at *7 (N.D.N.Y. Jan. 28, 2008); *Carroll v. Callanan*, No. 05 Civ. 1427 (LEK), 2007 WL 965435, at *6 (N.D.N.Y. Mar. 30, 2007). Rather, in the event that prison officials ignore a grievance that raises constitutional claims, the proper avenue to seek relief is the course taken by plaintiff here: directly petitioning the government for redress of his claims. *See Flick v. Alba*, 932

F.2d 728, 729 (8th Cir. 1991); *accord Johnson v. Barney*, No. 04 Civ. 10204 (LBS), 2007 WL 900977, at *1 (S.D.N.Y. Mar. 22, 2007) ("While a prisoner's right to meaningful access to the courts is clearly protected by the First Amendment right to petition the government, the same cannot be said for a prison grievance system.") (internal citation omitted); *Lumaj v. Williams*, No. 03 Civ. 1849 (PKC), 2004 WL 1207894, at *6 (S.D.N.Y. June 2, 2004).

Accordingly, the Court finds that plaintiff's claim regarding defendants' allegedly negligent mishandling of grievances cannot, as a matter of law, support a claim under Section 1983. Therefore, defendants' motion to dismiss this claim is granted with prejudice.

### 2. Living Conditions Claim

The Court denies defendants' motion to dismiss plaintiff's claim concerning his living conditions. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . For this reason, although a pretrial inmate mounting a constitutional challenge to environmental conditions must show deliberate indifference, it may generally be presumed from an absence of reasonable care."[4] *Benjamin v. Fraser*, 343 F.3d 35, 49 (2d Cir. 2003) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)) (internal quotation marks and additional citation omitted). Accordingly, where a pretrial detainee alleges "a protracted failure to provide safe prison conditions, the deliberate indifference standard does not require the detainees to show anything more than actual or imminent substantial harm." *Id.* at 51 (emphasis omitted); *accord Webster v. City of New York*, 333 F. Supp. 2d 184, 199-200 (S.D.N.Y. 2004).

Here, plaintiff has sufficiently pled a violation of his Due Process rights arising from the living conditions of his prison cell. Plaintiff identifies the following allegedly unsafe condition: the ceiling of his cell leaks when it rains, and, on December 16, 2005, this leak created "a puddle of water on the floor [of his cell]" that allegedly caused plaintiff to slip-and-fall. (Compl. ¶¶ 1, 5.) According to plaintiff, he has repeatedly notified defendants of this condition but his complaints have been ignored. (*See id.* ¶¶ 10-11.)

Given the "obviousness of the risk posed" by a leaking ceiling that previously resulted in a puddle on the floor of plaintiff's cell, thereby allegedly causing plaintiff to fall and to suffer serious injuries to his lower back and wrist, the Court finds that plaintiff has plausibly alleged a risk of "actual or imminent substantial harm" arising from an unsafe prison condition. *Benjamin*, 343 F.3d at 50; *see Ingram v. Steel*, No. 04 Civ. 5918 (DLC), 2006 WL 2349241, at *3 (S.D.N.Y. Aug. 15,

---

[4] The Second Circuit has found that challenges by pretrial detainees "to the environmental conditions of their confinement are properly reviewed under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth." *Benjamin v. Fraser*, 343 F.3d 35, 49-50 (2d Cir. 2003). Here, defendants specifically assert that plaintiff was a "pretrial detainee" at all relevant times. (Defs.' Mem. at 7.)

2006).[5] Therefore, accepting plaintiff's allegations as true and drawing all reasonable inferences in his favor, the Court finds that plaintiff has stated a plausible claim for relief based on a violation of his Due Process rights.[6]

### 3. Medical Needs Claim

The Court grants in part and denies in part defendants' motion to dismiss plaintiff's claims regarding the denial of adequate care to address his serious medical needs. Pretrial detainees' claims concerning the alleged denial of adequate medical care also implicate the Due Process Clause. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244-45 (1983); *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). The Second Circuit has found that "an unconvicted detainee's rights are at least as great as those of a convicted prisoner." *Weyant*, 101 F.3d at 856. Thus, "the official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." *Id.*

The standard for deliberate indifference has both an objective and a subjective prong. *See, e.g.*, *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). The objective prong requires that the alleged deprivation of care be sufficiently serious in objective terms: the plaintiff's condition must present a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotation marks and citation omitted). In determining whether a claimed injury is a "serious" medical condition, "factors that have been considered include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted).

The subjective prong requires a showing that the defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. *Hathaway*, 37 F.3d at 66. In other words, "the charged official must act with a sufficiently culpable state of mind." *Id.*

Here, plaintiff has sufficiently alleged facts to support a plausible claim against defendant Macabbee for deliberate indifference to his serious medical needs. As to the objective "condition of urgency" prong, *id.*, plaintiff alleges that, as a result of his slip-

---

[5] In *Ingram*, the district court found that the plaintiff had sufficiently pled a living conditions claim where "the only specific condition she identifie[d]" was "'a large hole' in the shower area that had been covered over with plywood . . . ." *Ingram*, 2006 WL 2349241, at *3.

[6] The Court notes, once again, that this finding is predicated on plaintiff's status as a *pretrial* detainee rather than an post-trial inmate. As the Second Circuit observed in *Iqbal v. Hasty*, 490 F.3d 143, 169 (2d Cir. 2007), in the pretrial detainee context, it has "explicitly rejected analogies to the Eighth Amendment [analysis that applies to post-trial detainees] that would require a showing of wantonness on the part of the prison official, or a showing that the alleged conditions were so inhumane as to constitute cruel and unusual punishment." (internal citations omitted).

and-fall, he suffered injuries to his "lower back area and his wrist," which rendered him immobile, at least for some period of time immediately following the accident, and that he did not receive adequate treatment for these injuries for at least three days following the incident. (Compl. ¶¶ 2-4, 8.) Therefore, accepting plaintiff's allegations as true, this Court is unable to conclude, as a matter of law, that plaintiff's alleged injuries could not have resulted in "'chronic and substantial pain'" that significantly affected his "daily activities." *See Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702); *see also Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (finding that while ordinarily a tooth cavity is not a serious injury, if left untreated, it can cause pain and degeneration and thus be considered serious).

Moreover, as to the subjective knowledge prong, plaintiff alleges that, immediately following his slip-and-fall on December 16, 2005, he was taken to the facility's clinic, where defendant Macabbee allegedly told the physician's assistant on duty, defendant Oduro, that plaintiff was "faking" and directed Oduro to "give [plaintiff] a few Motrins and send him back." (Compl. ¶ 4.) Plaintiff alleges that, as a result of Macabbee's instructions, Oduro "never once look[ed] at [plaintiff's] injuries nor touched them . . . . He just took defendant Macabbe[e]'s bias[ed] instructions on face-value."[7] (*Id.*) Prior to this visit, plaintiff alleges that defendant Macabbee witnessed the facility's "Emergency Medical Cadre" transport plaintiff from his cell — where plaintiff was allegedly lying on the floor immobilized as a result of his slip-and-fall — to the facility's health clinic. (*See id.* ¶ 3.)

Thus, plaintiff has sufficiently alleged that Macabbee — who had arrived at the scene of plaintiff's accident, and was thus aware of plaintiff's serious medical needs — sought to deny or delay plaintiff's access to medical care by informing Oduro that plaintiff was "faking." (*See id.* ¶ 4.) Therefore, while it is a close question in light of plaintiff's sparse allegations concerning defendant Macabbee's conduct, the Court finds that, at this stage of the case, plaintiff has sufficiently alleged facts plausibly supporting a claim that defendant Macabbee "intentionally den[ied]" plaintiff "access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Jernow v. Wendy's Int'l, Inc.*, No. 07 Civ. 3971 (LTS), 2007 WL 4116241, at *4 ("Although Plaintiff's allegations of injury are weak, they are sufficient for the purposes of surviving a 12(b)(6) motion to dismiss, where all inferences must be drawn in favor of the plaintiff.).

However, plaintiff has failed to sufficiently allege that defendant Oduro consciously disregarded a substantial risk of harm to plaintiff. Plaintiff alleges that Oduro failed to provide adequate medical treatment to plaintiff because Oduro "took . . . [at] face-value" Macabbee's statement that plaintiff was "faking" his injuries. (Compl. ¶ 4.) Plaintiff does *not* allege that Oduro, in fact, knew of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm to plaintiff. *Hathaway*, 37 F.3d at 66.

---

[7] Thereafter, according to plaintiff, he did not receive further medical attention until December 19, 2006, when x-rays were taken of plaintiff and he received an "upgrade[]" in his medications to address his "severe lower back pain." (Compl. ¶ 8.)

Therefore, accepting plaintiff's allegations as true and drawing all reasonable inferences in his favor, plaintiff has failed to plausibly allege that Oduro "acted with a sufficiently culpable state of mind" so as to support a claim of deliberate indifference. *Hathaway*, 99 F.3d at 553. Indeed, plaintiff's allegations regarding Oduro establish, at best, that Oduro was negligent in failing to provide adequate treatment to plaintiff and/or in accepting Macabbee's characterization of plaintiff's condition.[8] However, even "negligence constituting medical malpractice" does not violate an inmate's constitutional rights. *Patrick v. Amicucci*, No. 05 Civ. 5206 (GEL), 2007 WL 840124, at *6 (S.D.N.Y. Mar. 19, 2007) (internal citations omitted). Rather, an act of malpractice will amount to deliberate indifference only if "the malpractice involves culpable recklessness, *i.e.*, an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703. Here, plaintiff has plainly failed to allege that Oduro acted with a sufficiently culpable state of mind in providing medical treatment to plaintiff on December 16, 2005. *See Houston v. County of Westchester Dep't of Corr.*, No. 06 Civ. 3395 (DC), 2006 WL 3498560, at *6 (S.D.N.Y. Dec. 5, 2006) ("A medical malpractice claim is insufficient to support an inadequate medical care claim under the Fourteenth Amendment standard for pretrial detainees . . . .") (internal citation omitted).

Accordingly, defendants' motion is granted as to the medical needs claim against Oduro, and that claim is dismissed.

4. Defendants' Personal Involvement

Defendants assert that plaintiff has failed to sufficiently allege certain defendants' personal involvement in the alleged violations of plaintiff's rights. (*See* 12-16.) Specifically, defendants assert that defendants Oduro, Orlando, Pozzi, Amicucci, Hargraves, and Macabbee should be dismissed from the action on this ground.

"Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (internal citations omitted). In other words, under Section 1983, liability may not be imposed on a theory of *respondeat superior*. *Hemmings v. Gorczyk*, 134 F.3d 104, 109 n.4 (2d Cir. 1998). "The bare fact that [a defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a] claim." *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995).

Thus, to state a claim for damages under Section 1983, the plaintiff must allege sufficient facts to demonstrate that defendants were personally or directly involved in the violation, that is, that there was "personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). "The personal involvement of a supervisor may be established by showing that he (1) directly participated in the violation, (2) failed to

---

[8] The Court notes that defendants have submitted evidence relating to a medical examination of plaintiff purportedly conducted by defendant Oduro following plaintiff's slip-and-fall. (*See* Felix Decl. Ex. B.) The Court is not permitted to consider such evidence upon consideration of defendants' motion under Rule 12(b)(6). *See Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983).

remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated." *Iqbal*, 490 F.3d at 152 (citing *Colon*, 58 F.3d at 873).

Defendants' motion is granted as to defendants Oduro, Orlando, Rocco A. Pozzi, the Commissioner of the WDOC, Anthony Amicucci, the Warden of the County Jail. As to defendant Oduro, plaintiff has failed, for the reasons discussed *supra*, to plausibly allege that Oduro was personally involved in a violation of plaintiff's constitutional rights. As to defendant Orlando, plaintiff has failed to assert any factual allegations regarding improper conduct by this defendant, or even to mention him in the body of the Complaint.

As to defendants Pozzi and Amicucci, plaintiff alleges that he sent letters to these defendants regarding the living conditions in his cell, and that they failed to act on plaintiff's letters. (*See* Compl. ¶ 11.) However, it is well-settled that allegations regarding the "mere receipt" of a letter, complaint or grievance from an inmate, and the recipient's subsequent inaction, is insufficient to establish a claim of personal involvement by a correctional supervisor. *Islam v. Fischer*, No. 07 Civ. 3225 (PKC), 2008 WL 110244, at *3 (S.D.N.Y. Jan. 8, 2008); *see, e.g.*, *Islam v. Fischer*, No. 07 Civ. 3225 (PKC), 2008 WL 110244, at *3 (S.D.N.Y. Jan. 9, 2008) ("The mere receipt of a letter, complaint or grievance from an inmate is insufficient to establish a claim of personal involvement by a correctional supervisor.") (internal citation omitted); *Rivera v. Goord*, 119 F.Supp.2d 327, 344 (S.D.N.Y. 2000) (same); *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.") (internal citations omitted). Thus, in this case, because plaintiff fails to allege *any* conduct by defendants Pozzi and Amicucci beyond the receipt of plaintiff's letters, plaintiff's claims under Section 1983 against these defendants must be dismissed.

"Personal involvement will be found, however, where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Johnson*, 234 F. Supp. 2d at 363. Here, plaintiff alleges that defendant Hargraves received and *acted* upon plaintiff's grievances. (*See* Compl. ¶ 9.) Specifically, according to plaintiff, defendant Hargraves conducted the investigation of plaintiff's living conditions and corresponded with plaintiff regarding the purportedly "frivolous" nature of plaintiff's grievances. (*Id.*) These allegations sufficiently allege defendant Hargraves's personal involvement in the alleged living conditions violation so as to withstand defendants' motion to dismiss. *See Williams v. Fisher*, No. 02 Civ. 4558 (LMM), 2003 WL 22170610, at *10 (S.D.N.Y. Sept. 18, 2003).

Defendants' motion is also denied as to defendant Macabbee. As discussed *supra*, plaintiff sufficiently alleges that Macabbee sought to intentionally deny plaintiff access to medical treatment, thus creating a risk of actual or imminent harm to plaintiff, so as to

withstand defendants' motion to dismiss. (Compl. ¶¶ 4-5.)

### 5. *Monell* Claims

Finally, defendants argue that plaintiff's claims against the WDOC should be dismissed. It is well-settled that municipalities, such as a county department of corrections, may not be liable under § 1983 for constitutional torts committed by its employees under a *respondeat superior* theory. *See Villante v. Dep't of Corrs. of City of New York*, 786 F.2d 516, 519 (2d Cir. 1986). Rather, to prevail against a municipality, a plaintiff must demonstrate that his injury resulted from a municipal policy, custom, or practice. *See Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). Instead, a policy, custom, or practice of the municipal entity "may be inferred from acts or omissions of a municipality's supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff." *Villante*, 786 F.2d at 519.

Plaintiff has also brought claims against the individual defendants in their official capacities. Similarly, for these claims to survive, plaintiff must sufficiently allege that his injuries resulted from a municipal policy, custom or practice. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[T]here must be proof of such a custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself.") (citing *Hafer v. Melo*, 502 U.S. 21 (1991)).

Here, plaintiff fails to allege that he was harmed by a municipal custom or policy, or to allege facts from which it could be plausibly inferred that such a custom or policy caused his alleged injuries. On its face, the complaint alleges violations of plaintiff's rights solely attributable to the acts of individual employees of the WDOC, and does not assert that such injuries were the product of a municipal policy or custom. Moreover, the complaint cannot plausibly be construed as asserting a *Monell* claim based on the alleged "indifference" of the "administration" to plaintiff's complaints. (*See* Compl. ¶ 11.) Although plaintiff alleges that defendants Pozzi and Amicucci took no action following their receipt of plaintiff's grievance letters (*see id.*), he does not allege that this inaction constituted, or was the product of, a municipal policy or custom, nor does he link such inaction to a violation of his constitutional rights. Put simply, even under the liberal pleading standards applicable to a *pro se* litigant, the complaint does not contain factual allegations sufficient to support a plausible inference that his injuries resulted from a municipal custom, policy, or practice.

Accordingly, plaintiff's claims against the WDOC are dismissed. Similarly, plaintiff's claims against the defendants in their official capacity are dismissed and his claims are construed to be against the defendants solely in their individual capacities.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion is granted in part and denied in part. Specifically, defendants' motion to dismiss is GRANTED as to (1) plaintiff's claim concerning defendants' handling of plaintiff's grievances, (2) all of plaintiff's claims against defendants Orlando, Oduro, Pozzi, and Amicucci; and (3) plaintiff's *Monell* claims against WDOC and the individual defendants in their official capacities. Plaintiff's grievances claim is dismissed with prejudice. Plaintiff's claims against defendants Oduro, Orlando, Pozzi, and Amicucci, as well as plaintiff's *Monell* claims, are dismissed without prejudice to re-filing. Defendants' motion is DENIED in all other respects.

Within thirty days of the date of this Order, plaintiff shall submit either (1) an amended complaint, *see Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) ("[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the [*pro se*] complaint gives any indication that a valid claim might be stated."), or (2) a letter indicating his intention to prosecute this action on the basis of the complaint as it is composed following the disposition of the instant motion. If plaintiff fails to submit either of these two items within thirty days, the Court shall dismiss this action for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure.

Finally, the Court notes that, in the event that plaintiff continues to press his claims, defendants may submit a more focused motion for summary judgment on "the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused," *McCoy*, 255 F. Supp. 2d at 251, provided that defendants comply with Local Civil Rule 56.2 concerning "Notice to *Pro Se* Litigants Opposing Summary Judgment." In the event that defendants wish to pursue this course, they should submit a pre-motion conference letter to the Court at the appropriate time.

The Clerk of the Court shall terminate the motion docketed as document number 4.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: April 2, 2008
New York, New York

\* \* \*

Plaintiff James Harris appears *pro se*. Defendants are represented by Jane Hogan Felix, Esq., Westchester County Attorney's Office, 148 Martine Avenue, Room 600, White Plains, New York 10601.